# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| TAMIKA MCLEMORE, individually and on behalf of all others similarly situated, | Case No. 16-cv-14397 |
| *Plaintiff,* | **CLASS ACTION** |
| v. | **DEMAND FOR JURY TRIAL** |
| QUICKEN LOANS INC., a Michigan corporation, | |
| *Defendant.* | |

## CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Tamika McLemore ("McLemore" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial ("Complaint") against Defendant Quicken Loans Inc. ("Quicken Loans" or "Defendant") to stop its practice of making unsolicited autodialed and/or pre-recorded calls to the cellular telephones of consumers nationwide and to obtain redress for all persons injured by its conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

## NATURE OF THE ACTION

1.      Defendant Quicken Loans is America's largest online lender, having provided home purchase financing products to more than 2 million borrowers.

2.      In 2013 and 2014 alone, Defendant Quicken Loans closed more than $140 billion in mortgage loans.[1]

---

[1] http://www.quickenloans.com/about

3.	Unfortunately for consumers, Defendant Quicken Loans casts its marketing net too wide. That is, in an attempt to promote its business and to generate mortgage loans, Defendant conducted (and continues to conduct) a wide scale telemarketing campaign that repeatedly makes unsolicited calls to consumers' telephones—including cellular telephones and numbers that appear on the National Do Not Call Registry—without consent, all in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.* (the "TCPA").

4.	By making the telephone calls at issue in this Complaint, Defendant caused Plaintiff and the members of the Classes actual, concrete harm and cognizable legal injury. This includes the aggravation and nuisance, lost time, and invasions of privacy that result from the receipt of such calls, in addition to a loss of value realized for the monies consumers paid to their wireless carriers for the receipt of such calls. Furthermore, the calls interfered with Plaintiff's and the other Class members' use and enjoyment of their cellphones, including the related data, software, and hardware components. Defendant also caused substantial injury to their phones by causing wear and tear on their property, consuming battery life, and appropriating cellular data and minutes.

5.	The TCPA was enacted to protect consumers from unsolicited telephone calls like those alleged in this case. In response to Defendant's unlawful conduct, Plaintiff files the instant lawsuit and seeks an injunction requiring Defendant to cease all unsolicited telephone calling activities to consumers as complained of herein and an award of statutory damages to the members of the Class under the TCPA, together with costs and reasonable attorneys' fees.

**PARTIES**

6.	Plaintiff Tamika McLemore is a natural person and citizen of the State of South Carolina. Plaintiff resides in Richland County, SC.

2

7.      Defendant Quicken Loans is a corporation incorporated and existing under the laws of the State of Michigan with its headquarters located at 1050 Woodward Avenue, Detroit, Michigan 48226. Defendant Quicken Loans is registered to conduct business with the Michigan Secretary of State as entity number 242863. Defendant Quicken Loans conducts business throughout this District, the State of Michigan, and the United States.

## JURISDICTION AND VENUE

8.      This Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which is a federal statute.

9.      The Court has personal jurisdiction over Defendant because it is registered to conduct business in this District, it conducts significant amounts of business transactions within this District, has entered into consumer contracts in this District, and the unlawful conduct alleged in this Complaint occurred in and/or emanated from this District.

10.     Venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant is registered to conduct business in this District, it conducts significant amounts of business transactions within this District, and because the wrongful conduct giving rise to this case occurred in, was districted to, and/or emanated from this District. Venue is additionally proper because Defendant resides in this District.

## COMMON FACTUAL ALLEGATIONS

11.     Defendant Quicken Loans is a direct-to-consumer home lender. Unfortunately for consumers, Quicken Loans promotes its business by placing unsolicited autodialed and/or pre-recorded calls to consumers without their express written consent and often times in violation of the National Do Not Call Registry and the consumer's attempts to opt out of any future

3

telemarketing calls.

12. To make matters worse, Defendant calls these consumers on their cellular telephones using an "automatic telephone dialing system" ("ATDS") without their prior written express consent in violation of the TCPA.

13. Furthermore, Defendant calls consumers who have no "established business relationship" with Defendant and who are registered on the National Do Not Call Registry.

14. Finally, even when consumers try to opt out of future calls by requesting to never be called again, Defendant continues to call them.

15. Not surprisingly, these practices have led to significant complaints from consumers, which can be found quickly on the Internet. For example, consumers have publicly complained that:

- "Stop robocalling. It is a turn off, it makes me not want to work with your company to get a mortgage. Calling 10x a day 30 minutes apart and leaving no message is not effective. If I wanted to talk to you I would have by now."[2]

- "Called me four times in the past two days, left a message twice saying they were returning a call about my interest in refinancing my home, which is funny because I have no home to refinance. What a scam."[3]

- "Calls twice a day, leaves voice messages claiming to be returning a call about my interest in refinancing my home. I've never called them before."[4]

- "Keeps calling about a loan I didn't apply for."[5]

- "Rick from Quicken Loans called to get more information for a motgage [sic] inquiry that I never made."[6]

- "When I pick up the [call] I get hung up on. When I call back I receive a fast busy signal or it disconnects so I am unable to talk with anyone to find out what the

---

[2] http://800notes.com/Phone.aspx/1-800-251-9080
[3] *Id.*
[4] https://www.everycaller.com/phone-number/1-800-251-9080/
[5] *Id.*
[6] https://www.callsreported.com/8002519080.calls.reported

4

call is about. I would like it to stop."[7]

- "Robo call from Quicken Loans."[8]

- "Received several calls in a matter of two hours. Caller said he is calling because i wanted to refinance my home. Bunch of bull. Total scam. Do not give these people any info! Scam!"[9]

- "Have called every3 hrs until 10:00pm 1St day now have called 4 to 6 times a day for a wk now says quicken lone [sic],wants to refinance my home."[10]

- "Called 3 times in a row, but I have no loan or application with Quicken loans."[11]

16. At no time did Defendant obtain prior express consent from the Plaintiff and the Class orally or in writing to receive autodialed or pre-recorded voice calls. Also, at no time did Defendant obtain prior express consent that contained a disclosure informing Plaintiff or any other consumer that agreeing to receive autodialed calls was not a condition of the purchase of any property or service.

17. In making the phone calls at issue in this Complaint, Defendant and/or its agent utilized an ATDS. Specifically, the hardware and software used by Defendant (or its agent) has the capacity to store, produce, and dial random or sequential numbers, and/or receive and store lists of telephone numbers, and to dial such numbers, *en masse*, in an automated fashion without human intervention. Defendant's automated dialing equipment includes features substantially similar to a predictive dialer, inasmuch as it is capable of making numerous calls simultaneously (all without human intervention). In fact, one former employee recently disclosed her day-to-day activities at Quicken Loans "So what do you do all day? You sit on an auto dialer and make 600

---

[7] *Id.*
[8] https://callsreported.com/6048411954.calls.reported
[9] http://findwhocallsyou.com/855-909-2274
[10] *Id.*
[11] *Id.*

calls a day every day, no excuses. All your phone calls are listened to and scrutinized by your manager."[12]

18. Telemarketers who wish to avoid calling numbers listed on the National Do Not Call Registry can easily and inexpensively do so by "scrubbing" their call lists against the National Do Not Call Registry database. The scrubbing process identifies those numbers on the National Do Not Call Registry, allowing telemarketers to remove those numbers and ensure that no calls are placed to consumers who opt-out of telemarketing calls.

19. To avoid violating the TCPA by calling registered numbers, telemarketers must scrub their call lists against the Registry at least once every thirty-one (31) days. *See* 16 C.F.R. § 310.4(b)(3)(iv).

20. There are numerous third party services that will additionally scrub the call lists for a telemarketer to segment out landline and cellular telephone numbers, since the consent standards differ depending on what type of phone a telemarketer is calling.[13] Indeed, one service notes that it can:

> Instantly verify whether a specific phone number is wireless or wireline to learn if TCPA regulations apply – and verify the identity of the current subscriber to determine if they are the same party who provided you with consent.[14]

21. Telemarketers such as Defendant can also avoid TCPA violations by subscribing to commercially available services which insure that the number being called is up to date and associated with the correct contact. For example, companies such as Neustar, Experian, Early

---

[12]https://webcache.googleusercontent.com/search?q=cache:5cq6sLGUuU0J:https://www.glassdoor.ca/Reviews/Employee-Review-Quicken-Loans-RVW1964500.htm+&cd=23&hl=en&ct=clnk&gl=il

[13] See e.g. http://www.dncsolution.com/do-not-call.asp; http://www.donotcallprotection.com/do-not-call-compliance-solutions-1; http://www.mindwav.com/tcpa_compliance_solution.asp;
[14] https://www.neustar.biz/services/tcpa-compliance

6

Warning, Idiology, and Infutor advertise their ability to: (1) identify the current phone type: landline or wireless before they call, (2) verify in real-time the current owner of a phone number to avoid calling a recycled phone number, (3) update and append accurate address and phone information, and (4) identify active phone numbers.

22. Despite industry guidelines, commercially available resources and the obvious lack of consent, Quicken Loans fails to take the necessary steps to insure that its autodialed and/or prerecorded calls are placed only to consenting recipients.

23. Defendant knowingly made (and continues to make) telemarketing calls without the prior express consent of the call recipients and knowingly continues to call them after requests to stop. As such, Defendant not only invaded the personal privacy of Plaintiff and members of the putative Class, it also intentionally and repeatedly violated the TCPA.

## FACTS SPECIFIC TO PLAINTIFF MCLEMORE

24. On April 30, 2007, Plaintiff McLemore registered her cellular telephone number on the National Do Not Call Registry to avoid receiving unsolicited telemarketing calls.

25. Beginning in the first week of August, 2016 Plaintiff received a series of pre-recorded autodialed calls on her cellular telephone from Defendant Quicken Loans. When Plaintiff answered the calls she heard a pre-recorded message soliciting refinancing a mortgage.

26. The pre-recorded calls came from 855-909-2274 and 800-251-9080, both numbers used and controlled by Defendant Quicken Loans.

27. On August 29, 2016, Plaintiff received another call from Defendant on her cellular telephone. This call was answered, and unlike previous calls that were made using a pre-recorded message, this call was made by a live agent. Plaintiff McLemore informed the caller she was not interested, that she never gave them permission to call her, and not to call her again.

28.     On August 31, 2016 at 11:53 AM, despite having expressly informed Defendant that she did not wish to be called by them, Plaintiff received a second live call from Defendant Quicken Loans on her cellular telephone. This call also came from 800-251-9080. Plaintiff asked Defendant's agent why she was being called again and then questioned how Defendant Quicken Loans ever got her contact information, since she never filled out anything online or made any contact with anyone affiliated with Quicken Loans. The agent told Plaintiff that Quicken Loans was aware that she was eligible to have her mortgage refinanced. Plaintiff rents her home and does not have a mortgage. By the end of the call, Plaintiff again made it clear that she wanted no further communications from Defendant Quicken Loans.  A screenshot of the call log reflecting this August 31, 2016 call is below:



29.     Plaintiff does not have a relationship with Defendant, has never provided her consent to Defendant to call her, or requested that Defendant place calls to her or offer her its services. Simply put, Plaintiff has never provided any form of prior express written consent to Defendant to place calls to her and has no business relationship with Defendant.

8

30.     Defendant is and was aware that the above-described telephone calls were and are being made to consumers like Plaintiff who had not consented to receive them and whose telephone numbers were registered with the National Do Not Call Registry.

## CLASS ALLEGATIONS

31.     **Class Allegations**: Plaintiff McLemore brings this action pursuant to Federal Rule of Civil Procedure 23(a), (b)(2), and (b)(3) on behalf of herself and the two classes defined as follows:

> **Pre-Recorded Message Class**: All persons in the United States who (1) on or after four years prior to the filing of this action, (2) Defendant (or a third person acting on behalf of Defendant) called using a pre-recorded message, (3) on the person's cellular telephone, (4) for the purpose of selling Defendant's products and services, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.
>
> **Autodialed No Consent Class**: All persons in the United States who (1) on or after four years prior to the filing of this action, (2) Defendant (or a third person acting on behalf of Defendant) called using the same equipment that was used to call the Plaintiff, (3) on the person's cellular telephone, (4) for the purpose of selling Defendant's products and services, and (5) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.
>
> **Do Not Call Registry Class**: All persons in the United States who (1) on or four years prior to the filing of this action, (2) Defendant (or a third person acting on behalf of Defendant) called more than one time on his/her cellphone, (3) within any 12-month period, (4) where the cellphone number had been listed on the National Do Not Call Registry for at least thirty days, (5) for the purpose of offering the called party a loan, and (6) for whom Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.
>
> **No Mortgage Class:** All renters in the United States who (1) on or after four years prior to the filing of this action, (2) Defendant (or a third person acting on behalf of Defendant) called using a the same technology that was used to call the Plaintiff, (3) on the person's cellular telephone, (4) for the purpose of offering the called party the opportunity to refinance the called party's supposed mortgage loan, where (5) Defendant claims it obtained prior express consent in the same manner as Defendant claims it obtained prior express consent to call the Plaintiff.

The following people are excluded from the Classes: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents,

9

successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons. Plaintiff anticipates the potential need to amend the class definitions following class discovery.

32. **Numerosity**: The exact size of the Classes is unknown and not available to Plaintiff at this time, but it is clear that individual joinder is impracticable. On information and belief, Defendant made telephone calls to thousands of consumers who fall into the definition of the Classes. Members of the Classes can be easily identified through Defendant's records. Further, whether someone was a renter or had a mortgage loan capable of being refinanced is entirely objective.

33. **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

    (a)    Whether Defendant's conduct violated the TCPA;

    (b)    Whether Defendant systematically made telephone calls to individuals who did not previously provide Defendant and/or its agents with their prior express consent to receive such phone calls;

    (c)    Whether Defendant made the calls with the use of an ATDS or a pre-recorded voice;

  (d)  Whether Defendant systematically made telephone calls to consumers whose telephone numbers were registered with the National Do Not Call Registry;

  (e)  Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct;

  (f)  Whether Defendant systematically made telephone calls to consumers after they explicitly asked to no longer be called by Defendant; and

  (g)  Whether Defendant made calls to renters to offer them the opportunity to refinance their mortgage loans (that they didn't actually have).

  34. **Typicality**: Plaintiff's claims are typical of the claims of the other members of the Classes. Plaintiff and the Classes sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Classes.

  35. **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in complex class actions. Plaintiff has no interest antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff.

  36. **Policies Generally Applicable to the Classes**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes as respective wholes, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class members, and making final injunctive relief appropriate with respect to the Classes as respective wholes. Defendant's practices challenged herein apply to and affect the Class members uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with respect to the Classes as respective wholes, not on

facts or law applicable only to Plaintiff.

37.     **Superiority**: This case is also appropriate for class certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy given that joinder of all parties is impracticable. The damages suffered by the individual members of the Classes will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the individual members of the Classes to obtain effective relief from Defendant's misconduct. Even if members of the Classes could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort and expense will be fostered and uniformity of decisions ensured.

**FIRST CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227,** *et seq.*
**(On behalf of Plaintiff and the Pre-recorded Message Class)**

38.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

39.     Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Pre-Recorded Message Class—without their prior express written consent—in an effort to sell Quicken Loans' products and services.

40.     Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

41. Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Pre-Recorded Message Class simultaneously and without human intervention.

42. By making unsolicited telephone calls to Plaintiff and members of the Pre-Recorded Message Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

43. To the extent that Defendant made calls for business purposes, such calls to cellular telephones still required prior express consent. Here there was none.

44. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Pre-Recorded Message Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

45. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Pre-Recorded Message Class.

**SECOND CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227, *et seq.***
**(On behalf of Plaintiff and the Do Not Call Registry Class)**

46. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

47. 47 U.S.C. § 227(c) provides that any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.

48. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

49. 47 C.F.R. § 64.1200(e), provides that § 64.1200(c) and (d) "are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991,'" which the Report and Order, in turn, provides as follows:

> The Commission's rules provide that companies making telephone solicitations to residential telephone subscribers must comply with time of day restrictions and must institute procedures for maintaining do-not-call lists. For the reasons described above, we conclude that these rules apply to calls made to wireless telephone numbers. We believe that wireless subscribers should be afforded the same protections as wireline subscribers.

50. 47 C.F.R. § 64.1200(d) further provides that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:

14

(1) Written policy. Persons or entitles making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

(3) Recording, disclosure of do-not-call requests. If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request . . . .

(4) Identification of sellers and telemarketers. A person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted. The telephone number provided may not be a 900 number or any other number for which charges exceed local or long distance transmission charges.

(5) Affiliated persons or entities. In the absence of a specific request by the subscriber to the contrary, a residential subscriber's do-not-call request shall apply to the particular business entity making the call (or on whose behalf a call is made), and will not apply to affiliated entities unless the consumer reasonably would expect them to be included given the identification of the caller and the product being advertised.

(6) Maintenance of do-not-call lists. A person or entity making calls for telemarketing purposes must maintain a record of a consumer's request not to receive further telemarketing calls. A do-not-call request must be honored for 5 years from the time the request is made.

51.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to wireless telephone subscribers such as Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is

15

maintained by the federal government. These consumers requested to not receive calls from Defendant, as set forth in 47 C.F.R. § 64.1200(d)(3).

52.     Defendant also violated 47 C.F.R. § 64.1200(d) by, *inter alia*, failing to have a written policy of dealing with do not call requests, by failing to inform or train its personnel involved in any aspect of telemarketing regarding any do not call list, and by failing to record and honor do not call requests.

53.     Defendant made more than one unsolicited telephone call to Plaintiff and members of the Do Not Call Registry Class within a 12-month period without their prior express consent to receive such calls. Plaintiff and members of the Do Not Call Registry Class never provided any form of consent to receive telephone calls from Defendant, and/or Defendant does not have a current record of consent to place telemarketing calls to them.

54.     Defendant violated 47 C.F.R. § 64.1200(d) by initiating calls for telemarketing purposes to wireless telephone subscribers, such as Plaintiff and the Do Not Call Registry Class, without instituting procedures that comply with the regulatory minimum standards for maintaining a list of persons who request not to receive telemarketing calls from them.

55.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are each entitled, *inter alia*, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

### THIRD CAUSE OF ACTION
**Violation of 47 U.S.C. § 227, *et seq.***
**(On behalf of Plaintiff and the Autodialed No Consent Class)**

56.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

57. Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class—without their prior express written consent—in an effort to sell Quicken Loans' products and services.

58. Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

> (A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and
>
> (B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

59. Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*. Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Autodialed No Consent Class simultaneously and without human intervention.

60. By making unsolicited telephone calls to Plaintiff and members of the Autodialed No Consent Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

61. To the extent that Defendant made calls for business purposes, such calls to cellular telephones still required prior express consent. Here there was none.

62. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Autodialed No Consent Class suffered actual damages in the form of monies paid to receive the

unsolicited telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

63. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Pre-Recorded Message Class.

**FOUTH CAUSE OF ACTION**
**Violation of 47 U.S.C. § 227,** *et seq.*
**(On behalf of Plaintiff and the Renter Refinance Class)**

64. Plaintiff incorporates the foregoing allegations as if fully set forth herein.

65. Defendant made unsolicited and unwanted telemarketing calls to telephone numbers belonging to Plaintiff and the other members of the Renter Refinance Class—without their prior express written consent—in an effort to get the called party to refinance their supposed home mortgage loans. However, Plaintiff and the other Renter Refinance Class members are renters—they have no home mortgage loans to refinance.

66. Defendant failed to obtain any prior express consent that included, as required by 47 C.F.R. § 64.1200(f)(8)(i) a "clear and conspicuous" disclosure informing the person signing that:

(A) By executing the agreement, such person authorizes the seller to deliver or cause to be delivered to the signatory telemarketing calls using an automatic telephone dialing system or an artificial or prerecorded voice; and

(B) The person is not required to sign the agreement (directly or indirectly), or agree to enter into such an agreement as a condition of purchasing any property, goods, or services.

67. Further, Defendant made the telephone calls using equipment that had the capacity to store or produce telephone numbers to be called using a random or sequential number generator, and/or receive and store lists of phone numbers, and to dial such numbers, *en masse*.

Defendant utilized equipment that made the telephone calls to Plaintiff and other members of the Renter Refinance Class simultaneously and without human intervention.

68. By making unsolicited telephone calls to Plaintiff and members of the Renter Refinance Class's cellular telephones without prior express consent, and by utilizing an ATDS, Defendant violated 47 U.S.C. § 227(b)(1)(A)(iii).

69. As a result of Defendant's unlawful conduct, Plaintiff and the members of the Renter Refinance Class suffered actual damages in the form of monies paid to receive the unsolicited telephone calls on their cellular telephones and, under Section 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each such violation of the TCPA.

70. Should the Court determine that Defendant's conduct was willful and knowing, the Court may, pursuant to Section 227(b)(3), treble the amount of statutory damages recoverable by Plaintiff and the other members of the Renter Refinance Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Tamika McLemore, individually and on behalf of the Classes, prays for the following relief:

1. An order certifying the Classes as defined above, appointing Plaintiff Tamika McLemore as the representative of the Classes and appointing her counsel as Class Counsel;

2. An award of actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, to be trebled in the event the Court finds that Defendant has acted knowingly and willfully, to be paid into a common fund for the benefit of the Plaintiff and the other Class Members;

3. An injunction requiring Defendant and its agents to cease all unsolicited telephone calling activities, and otherwise protecting the interests of the Classes;

4. A declaratory judgment declaring that Defendant's calls violated the TCPA, that Defendant's equipment constitutes an ATDS under the TCPA, that Defendant failed to obtain prior express consent to call Plaintiff and the other Class members, and that Defendant did not institute procedures that comply with the regulatory minimum standards for maintaining a list of persons who are registered on the National Do Not Call Registry and scrubbing those numbers from their dialing list;

5. An award of reasonable attorneys' fees and costs to be paid from the common fund; and

6. Such other and further relief that the Court deems reasonable and just.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

Respectfully Submitted,

**TAMIKA MCLEMORE**, individually and on behalf of all others similarly situated,

Dated: December 19, 2016          By:  Steven L .Woodrow
                                          One of Plaintiff's Attorneys

Steven L. Woodrow
swoodrow@woodrowpeluso.com
Woodrow & Peluso, LLC
3900 East Mexico Ave., Suite 300
Denver, Colorado 80210
Telephone: (720) 213-0675
Facsimile: (303) 927-0809

*Counsel for Plaintiff and the Putative Classes*